**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

FILED
CLERK, U.S. DISTRICT COURT
Sept 7, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY pd DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES OF AMERICA,

Plaintiff,

vs.

KEITH PRESTON GARTENLAUB,

Defendant.

**8:14-cr-00173-CAS**

# RENEWED MOTION FOR APPOINTMENT OF COUNSEL

Defendant Keith Gartenlaub respectfully seeks the appointment of a CJA attorney with expertise in FISA/national security issues, prosecutorial misconduct, and digital forensic evidence, to assist in the preparation, presentation, and litigation of the complex issues in this case.

**TO THE HONORABLE COURT AND ALL PARTIES:**

PLEASE TAKE NOTICE that Defendant Keith Gartenlaub respectfully moves this Court for appointment of counsel pursuant to the Criminal Justice Act. This motion is based upon the attached exhibits,

including Exhibit A (Motion to Reconsider, which details constitutional violations and prosecutorial misconduct) and Exhibit B (Waiver of Evidentiary Hearing), the records on file, and such further evidence or argument as may be presented to the Court.

INTRODUCTION

Defendant respectfully renews his request for the appointment of counsel. This case presents issues of extraordinary complexity, including matters involving FISA-derived evidence, due process violations, ineffective assistance of counsel, prosecutorial misconduct, and questions surrounding the waiver of an evidentiary hearing. These issues are not only factually and legally intricate but also carry constitutional implications that cannot be properly addressed without the assistance of appointed counsel.

Defendant further notes that expert assistance in digital forensic analysis will also be required, and appointed counsel will be able to promptly move for such authorization under the Criminal Justice Act.

In support of this renewed motion, Defendant attaches two exhibits:

- Exhibit A – Motion to Reconsider, prepared with the assistance of forensic computer analyst Jeff Fischbach, who previously worked on Defendant's case and provided expert analysis of the digital evidence. The exhibit spans over 250 pages and presents multiple, distinct grounds affecting the fairness of trial and sentencing.
- Exhibit B – Waiver of Evidentiary Hearing, which demonstrates that Defendant was deprived of a meaningful opportunity to develop the record in his own defense.

Defendant further notes that he has previously been declared indigent by this Court. Since that time, his financial circumstances have only worsened. Following his imprisonment, Defendant was unable to

work for several years. Although he briefly worked after release, he was hospitalized in June 2019 and subsequently declared disabled. Defendant's wife is also disabled, and their household income is now limited to Social Security Disability Insurance benefits. These circumstances make clear that Defendant is financially unable to retain private counsel and remains eligible for appointment of counsel under the Criminal Justice Act.

Defendant also possesses additional supporting materials (including Exhibits C and D) that further demonstrate the seriousness of the issues, including prosecutorial misconduct and other irregularities that occurred during the prosecution. However, in order to avoid overburdening the Court at this stage, Defendant has limited the present submission to Exhibits A and B. Defendant respectfully reserves the right to supplement the record with additional exhibits as may become necessary or upon the appointment of counsel.

Prompt appointment of counsel is also critical, as probation-related restrictions and prior interruptions to Defendant's access to legal materials and communications risk causing further delays and prejudice.

This approach is intended to balance two objectives: first, to clearly demonstrate the necessity of appointing counsel in light of the serious and complex issues already documented; and second, to respect the Court's time and resources by not submitting unnecessarily voluminous materials at this stage.

CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, and in light of the substantial constitutional issues presented in Exhibits A and B, and Defendant's ongoing indigency, Defendant respectfully requests that the Court:

1. Appoint a CJA attorney with expertise in FISA/national security

issues, prosecutorial misconduct, and digital forensic evidence to assist Defendant in the preparation, presentation, and litigation of the complex issues arising from his conviction and sentence; and
2. Grant such other and further relief as the Court deems just and proper.

Without counsel, Defendant cannot meaningfully present or litigate these issues.

Defendant emphasizes that the present motion does not seek to burden the Court with the full breadth of supporting evidence at this stage. Rather, the attached exhibits—standing alone—demonstrate the complexity, constitutional significance, and the seriousness of the prosecutorial misconduct at issue in this case, and make clear that the appointment of qualified counsel is necessary to ensure fairness and justice. Additional exhibits (C and D) will be reserved for later submission as needed.

Respectfully submitted,

Dated: September 7, 2025

/s/ Keith Gartenlaub
Keith Gartenlaub, Defendant Pro Se

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

KEITH PRESTON GARTENLAUB,

Defendant.

**Case No. 8:13-cr-00176-CAS-1**
**EXHIBIT INDEX**

Exhibit A – Motion to Reconsider, prepared with the assistance of forensic computer analyst Jeff Fischbach (approximately 250 pages). This exhibit presents multiple, distinct grounds affecting the fairness of trial and sentencing, including FISA-derived evidence, due process violations, ineffective assistance of counsel, and prosecutorial misconduct.

Exhibit B – Waiver of Evidentiary Hearing. This exhibit demonstrates that Defendant was deprived of a meaningful opportunity to develop the record in his own defense.

Respectfully submitted,

Dated: September 7, 2025

/s/ Keith Gartenlaub
Keith Gartenlaub, Defendant Pro Se

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

KEITH PRESTON GARTENLAUB,

Defendant.

Case No. 8:13-cr-00176-CAS-1

EXHIBIT A TO

RENEWED MOTION FOR

APPOINTMENT OF COUNSEL

EXHIBIT A – PRIOR PRO SE SUBMISSION
(SUPPORTING MATERIAL ONLY – NOT A MOTION)

This document was originally prepared by Defendant pro se with the assistance of forensic expert Jeff Fischbach.

It is attached here only as supporting material to demonstrate:

1. The seriousness and complexity of the issues raised in this case; and
2. Defendant's inability, due to indigency, disability, and lack of legal training, to properly litigate such matters without counsel.

Defendant does not request the Court to adjudicate this document as a motion. It is submitted solely to support the accompanying Renewed Motion for Appointment of Counsel.

Respectfully submitted,

/s/ Keith Preston Gartenlaub
Keith Preston Gartenlaub
Defendant, Pro Se

Dated: September 6, 2025

No. 24-7437

IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

--------------------------------------------

KEITH GARTENLAUB,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

--------------------------------------------

MOTION TO RECONSIDER DENIAL OF LEAVE TO FILE

SECOND OR SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

---

Keith Gartenlaub, Pro Se

California, USA

(949) 880-1067

# Table of Contents

Table of Contents ........ i

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. BACKGROUND & PROCEDURAL HISTORY ........ 5

III. JUDICIAL FINDINGS INDICATING EXTRAORDINARY CIRCUMSTANCES ........ 7

IV. LEGAL STANDARD FOR RECONSIDERATION ........ 9

V. NEWLY DISCOVERED EVIDENCE – CATEGORIZED BY CONSTITUTIONAL CLAIM ........ 12

A. INEFFECTIVE ASSISTANCE OF COUNSEL ........ 13

1. FISA Suppression and Newly Discovered Secret Agreement ........ 14

2. Coerced Ineffectiveness Waiver ........ 22

3. Rule 16 Violations, Ineffective Assistance of Counsel, and Failure to Request Continuance ........ 27

4. Juror Bias – Law Enforcement Connections ........ 34

5. Failing to Present Forensic Expert or Evidence ........ 37

B. PROSECUTORIAL MISCONDUCT ........ 40

1. Suppression of Exculpatory Evidence ........ 41

2. Retaliatory Motive and Coercion ........ 42

3. Brady and Napue Violations ........ 44

VI. WHY THIS EVIDENCE WAS NOT RAISED EARLIER ........ 46

VII. CUMULATIVE IMPACT & MISCARRIAGE OF JUSTICE ........ 50

VIII. RELIEF REQUESTED ........ 51

CERTIFICATE OF COMPLIANCE ........ 52

APPENDIX A – INDEX OF EXHIBITS ........ A-1

APPENDIX B – LETTER OF CORRESPONDENCE ........ B-1

APPENDIX C -TIMELINE OF KEY EVENTS AND DISCOVERIES ........ C-1

APPENDIX D – TIMELINE OF RETALITORY PROSECUTION EVENTS ........ D-1

**TABLE OF AUTHORITIES**

Cases

Blackledge v. Perry, 417 U.S. 21 (1974) ..........................................................47

Brady v. Maryland, 373 U.S. 83 (1963) ..........................................................45

House v. Bell, 547 U.S. 518 (2006) ..........................................................14

Napue v. Illinois, 360 U.S. 264 (1959) ..........................................................46

Schlup v. Delo, 513 U.S. 298 (1995) ..........................................................13

Strickland v. Washington, 466 U.S. 668 (1984) ..........................................14

United States v. Cronic, 466 U.S. 648 (1984) ..........................................43

Statutes

28 U.S.C. § 2255 ..........................................................................................1

28 U.S.C. § 2255(h) ..........................................................................................1

Fed. R. Crim. P. 16 ..........................................................................................28

Other Authorities

Federal Rules of Appellate Procedure Rule 32 ................................................60

## I. INTRODUCTION

Petitioner Keith Gartenlaub respectfully moves this Court to reconsider its March 18, 2025 Order denying his application for leave to file a second or successive motion under 28 U.S.C. § 2255.

The denial was based on a finding that Petitioner had not made a prima facie showing under § 2255(h).

However, newly discovered evidence—unavailable at the time of trial and during the prior § 2255 proceeding—establishes both

**significant constitutional violations and Petitioner's actual innocence.**

Moreover, the sentencing judge herself recognized this case as

**"not like any other"**

(EXHIBIT A, Sentencing Hr'g Tr. at 5:12), and admitted to having

**"agonized"**

(id. at 6:1) over it due to

**unusual circumstances and evidentiary deficits, including the absence of proof that Petitioner ever downloaded, viewed, or possessed the alleged contraband**

(id. at 5–6).

Petitioner presents this evidence in support of reconsideration to

**prevent a manifest injustice.**

The newly uncovered materials include forensic reports, court transcripts, internal communications, and defense files revealing that:

**(1) key forensic evidence was misrepresented or omitted;**

**(2) trial counsel secretly agreed with prosecutors to suppress the FISA origin of the case without Petitioner's knowledge or consent;**

**(3) expert findings confirming post-search manipulation were suppressed;**

**(4) prosecutorial misconduct tainted the proceedings through Brady and Napue violations; and**

**(5) Petitioner was prejudiced by ineffective assistance of counsel and juror bias.**

Viewed in light of Judge Snyder's own findings of evidentiary uncertainty, combined with this newly discovered and previously suppressed evidence, **no reasonable juror would have found Petitioner guilty beyond a reasonable doubt.**

The Court's prior ruling was also based on an

**incomplete and inaccurate record.**

Filing pro se, and with informal assistance from the Ninth Circuit Clerk's Office, Petitioner attempted to correct the filing errors but inadvertently worsened them.

Following specific guidance from the Clerk of Court on March 14, 2025, Petitioner submitted a Letter of Correspondence to clarify and correct the record.

However, the Court ruled on the motion before these corrections were reviewed, resulting in an

**evaluation of the wrong version of Petitioner's application and supporting materials.**

This motion is accompanied by supporting exhibits and declarations attached as **Appendix A**.

Additionally, Petitioner submitted a procedural Letter of Correspondence to the Clerk of Court, attached as **Appendix B**, to correct docketing issues arising from prior filings in Case No. 24-7437.

Furthermore, Petitioner submits a **timeline of critical discovery milestones** (**Appendix C**) and a **detailed chronology of the government's retaliatory conduct** (**Appendix D**). These materials are essential to fully appreciating the **sequence of misconduct** and the **systematic concealment** of facts that form the foundation of Petitioner's claims of **newly discovered evidence** and **serious constitutional violations**.

## II. BACKGROUND & PROCEDURAL HISTORY

Petitioner Keith Gartenlaub was convicted on December 10, 2015, in the United States District Court for the Central District of California for possession of child pornography under 18 U.S.C. § 2252(a)(5)(B). He was sentenced to 41 months of imprisonment and lifetime supervised release. The prosecution's case was based entirely on digital evidence obtained through secret surveillance authorized under the Foreign Intelligence Surveillance Act (FISA), despite no espionage or national security charges ever being filed.

Mr. Gartenlaub has consistently maintained his innocence, rejecting a plea offer that would have required no jail time in favor of a trial where he could clear his name. Following his conviction, he filed a timely appeal and then pursued a motion under 28 U.S.C. § 2255 with the assistance of a pro bono attorney. That motion focused primarily on FISA-related constitutional violations. However, once the scope and magnitude of the misconduct and constitutional issues became apparent, counsel acknowledged he **did not have the resources or bandwidth to fully develop or argue all viable claims**. As a result, many critical issues were never litigated in the initial 2255 proceeding.

In 2025, Petitioner—acting pro se—submitted an application for leave to file a second or successive § 2255 motion based on newly discovered evidence, including proof of ineffective assistance of counsel, prosecutorial misconduct, and violations stemming from the misuse of FISA surveillance. On March 18, 2025, the Ninth Circuit denied the application, stating that Petitioner had not made a prima facie showing under § 2255(h) that the new evidence would establish actual innocence or a retroactive new rule of constitutional law.

However, the Court's denial did not reflect the full extent of the newly discovered evidence, much of which became accessible only after Petitioner obtained his defense file years after trial, reviewed previously undisclosed communications, and received recent forensic evaluations in 2024 and 2025. Additionally, procedural barriers—including a disability declared in 2019 and legal delays associated with the earlier pro bono representation—prevented earlier filings.

Petitioner now seeks reconsideration of the Court's denial, providing a detailed record of newly discovered evidence that could not have been raised in prior proceedings. This evidence not only supports multiple constitutional claims but demonstrates that no reasonable factfinder, presented with the complete record, would have found Petitioner guilty.

## III. JUDICIAL FINDINGS INDICATING EXTRAORDINARY CIRCUMSTANCES

At sentencing, the Honorable Christina A. Snyder, who presided over all pretrial, trial, and post-trial proceedings, articulated multiple concerns that directly support the relief requested in this motion. Her statements reflect extraordinary doubt, recognition of evidentiary deficiencies, and an acknowledgment that this case was unlike any other she had seen.

Judge Snyder unequivocally stated:

**"This is not like any other case that one is going to find."**

(EXHIBIT A, Sentencing Hr'g Tr. at 5:12).

She emphasized that no new contraband had been collected for over a decade:

**"There doesn't seem to have been any addition to the collection of child pornography from the time it was first assembled back in approximately 2004. And that's a very unusual set of circumstances."**

(id. at 5:18–22).

She further acknowledged the absence of evidence proving the defendant knowingly viewed or possessed the material:

**"The defense forensic expert Mr. Fishbach said there was no evidence that child pornography was ever seen by anyone who used the computer much less Mr. Gartenlaub."**

(id. at 6:3–6), and

**"The government's forensic expert Mr. Pixley said he could not find any evidence of the material being downloaded on to any of the computers."**

(id. at 6:6–8).

Most powerfully, Judge Snyder stated her personal struggle with the sentencing:

**"I think something in the range of 42 to 48 months is probably where I'm leaning after having agonized over this for a long period of time."**

(id. at 6:10–12).

She also noted the broader context of the prosecution:

**"Mr. Su Bin who plead guilty to espionage charge was sentenced to less than 60 months in the prison."**

(id. at 7:2–4).

While not directly comparing the two, her statement highlights the sentencing disparity and confirms the atypical nature of the government's prosecution.

These statements—made by the trial judge—establish that even before the newly discovered evidence now before this Court, the record already reflected significant factual uncertainty and judicial discomfort. These remarks meet the standard of extraordinary circumstances warranting reconsideration under 28 U.S.C. § 2255(h)(1) and align with the miscarriage of justice standard outlined in

**Schlup v. Delo, 513 U.S. 298, 314–15 (1995).**

## IV. LEGAL STANDARD FOR RECONSIDERATION

A petitioner seeking leave to file a second or successive motion under 28 U.S.C. § 2255 must make a **prima facie showing** that the motion is based on either:

1. **Newly discovered evidence** that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by **clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty of the offense**; or

2. A **new rule of constitutional law**, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

   (28 U.S.C. § 2255(h))

In this case, Petitioner seeks reconsideration of the denial of leave based specifically on **§ 2255(h)(1)**—the newly discovered evidence prong. Reconsideration is appropriate where a prior denial did not fully consider critical new facts or where procedural limitations prevented the proper presentation of claims that meet the statutory threshold. Courts retain inherent authority to revisit such decisions to prevent a **miscarriage of justice**, particularly in the context of actual innocence or serious constitutional violations.

Moreover, the United States Supreme Court has emphasized that claims of **actual innocence** can serve as a gateway to review otherwise procedurally barred constitutional claims. In *Schlup v. Delo*, 513 U.S. 298 (1995), the Court held that newly discovered evidence which casts doubt on the petitioner's guilt may allow federal courts to reach the merits of constitutional claims that would otherwise be barred. Similarly, *House v. Bell*, 547 U.S. 518 (2006), reinforced that credible new evidence

demonstrating it is more likely than not that no reasonable juror would have convicted is sufficient to warrant review.

In addition, ineffective assistance of counsel claims based on previously unavailable evidence are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing that counsel's performance was deficient and that the deficiency prejudiced the defense. Newly discovered facts supporting such a claim, particularly where counsel concealed or failed to pursue exculpatory evidence, may satisfy the § 2255(h)(1) threshold.

Petitioner's newly uncovered evidence—including concealed agreements to suppress the FISA origin of the investigation, suppression of forensic findings indicating post-search tampering, and coerced waivers—meets this legal standard. If proven, this evidence would lead a reasonable juror to harbor serious doubt about Petitioner's guilt.

Reconsideration is therefore not only appropriate—it is **constitutionally required** to ensure that procedural barriers do not shield a wrongful conviction from review.

## V. NEWLY DISCOVERED EVIDENCE – CATEGORIZED BY CONSTITUTIONAL CLAIM

**Each claim below satisfies the prima facie standard for a second or successive motion under 28 U.S.C. § 2255(h)(1) because it is newly discovered and, if proven, would likely prevent any reasonable juror from convicting.** Petitioner categorizes the newly discovered evidence by the specific constitutional rights implicated, and identifies supporting exhibits, the timing of discovery, materiality, prejudice, and the resulting constitutional violation.

This section presents newly discovered evidence that was either unavailable or undiscoverable through due diligence at the time of Petitioner's original § 2255 motion.

As detailed in **Appendix C**, Petitioner diligently uncovered this evidence over time despite facing substantial procedural obstacles, disability limitations, and suppressed information. The following sections present the newly discovered evidence, organized by the constitutional violations they implicate—ranging from ineffective assistance of counsel to prosecutorial misconduct—and is supported by newly uncovered records, declarations, expert analysis, and firsthand testimony. For each claim, Petitioner identifies:

**(A)** when and how the evidence was discovered,

**(B)** why it is material and constitutionally significant,

**(C)** how it would have changed the outcome of trial, and

**(D)** a concise legal conclusion showing why the § 2255(h)(1) standard is satisfied.

Collectively, the newly presented evidence reveals that Petitioner's conviction resulted from a **cascading breakdown in constitutional protections**, not the fair adjudication required by due process. These claims are supported by factual specificity, corroborated documents, and legal authorities, and they warrant full review and relief.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees the right to the effective assistance of counsel. The following claims demonstrate that Petitioner was denied that right in multiple ways—each independently prejudicial and cumulatively devastating to the fairness of his trial. These failures include: counsel's agreement to suppress material evidence, coercion of a waiver of constitutional rights, the refusal to present exculpatory expert testimony, and failure to challenge a biased juror. Each claim is supported by newly discovered evidence that was unavailable to Petitioner during his original § 2255 motion. This includes trial file materials, emails, declarations, and

expert documentation that prove not only deficient performance, but that the outcome of the proceeding would have been different had effective representation been provided. Each subsection satisfies the standard for reconsideration under 28 U.S.C. § 2255(h)(1).

## 1. FISA Suppression and Newly Discovered Secret Agreement

### ***A. Pretrial FISA Motions and Background***

Prior to trial, Petitioner's defense counsel, Mark Werksman, filed multiple motions directly challenging the legality of the government's use of FISA-derived evidence and the admissibility of that evidence in Petitioner's trial. These filings included:

1. A **Motion to Suppress Evidence Derived from FISA Surveillance** (filed under seal);
2. A **Motion for Disclosure of FISA Materials** (filed under seal);
3. A **Motion to Quash and Traverse Search Warrants** (Dkt. 54; attached as EXHIBIT B);
4. A **Request for a Franks Hearing**.

The Motion to Quash (EXHIBIT B) challenged the government's ability to rely on the fruits of the FISA-authorized searches, explicitly alleging that "material misstatements and omissions" infected the government's affidavits and warrant applications, including those related to FISA surveillance. The defense made clear that it intended to challenge the validity of the underlying FISA warrants and all derivative evidence.

In response, the government filed a **Government's Unclassified Memorandum in Opposition** (Dkt. 82; attached as EXHIBIT C), acknowledging that Petitioner's counsel was directly challenging the use of FISA-derived evidence. The government specifically argued that "[t]he FISA surveillance and searches in this case were properly authorized and complied with all statutory and constitutional requirements," and urged the court to deny suppression (EXHIBIT C at 2). This record makes clear that FISA-related issues were fully litigated prior to trial and were central to the defense's original theory of the case.

***B. Newly Discovered Secret Agreement***

Petitioner has since discovered, through post-conviction review in 2024, that defense counsel had secretly entered into a **pretrial agreement** with the prosecution to suppress all mention of FISA and the national security

origins of the investigation at trial — without Petitioner's knowledge or consent and without any Quid Pro Quo for defense. This agreement was documented during the November 16, 2015 pretrial status conference, where the prosecutor stated, "**the subject matter of it will not be a part of the trial**," to which Werksman replied, "**No mention of FISA**" (EXHIBIT D).

Petitioner did not discover this agreement until after trial and the conclusion of the first habeas proceeding, when analysis of newly obtained court transcripts, documents, and communications revealed its existence for the first time.

Petitioner's affidavit (EXHIBIT E) establishes that he repeatedly and expressly instructed trial counsel to raise the FISA origins of the case, both prior to and during trial, fully understanding its central importance to the defense. Petitioner relied on counsel's repeated assurances that FISA would be presented. As set forth in the affidavit, Petitioner was never informed — before or during trial — that counsel had secretly agreed with the prosecution to suppress this vital defense, nor was Petitioner given an opportunity to consent or object. Petitioner further swears that, had he known of this secret agreement, he would have immediately objected to the

court, sought counsel's removal, and testified himself to reveal the truth. This is corroborated by Chris Elliott, a trial observer, who submitted a sworn affidavit (EXHIBIT F) affirming that he personally observed both Petitioner and himself repeatedly challenge Mr. Werksman about the need to raise the FISA issues. Both Petitioner and Elliott argued to Werksman that disclosing the failed national security investigation would be less prejudicial than allowing the jury to speculate about the investigation's origins. This omission was especially prejudicial given that the prosecution called a representative from Boeing to testify, leaving the jury with the false impression that the investigation arose from suspicions at work. Mr. Werksman did not cross-examine this witness, address her testimony, or correct the impression left with the jury in any way. Nonetheless, Werksman refused to raise FISA, never disclosing that his refusal was the result of a secret pretrial agreement with the prosecution, made without Petitioner's knowledge or consent. Crucially, this agreement was made before the defense forensic expert, Jeff Fischbach, had completed his analysis. Post-conviction review revealed that Mr. Fischbach had found forensic evidence of post-search alterations to the government's forensic images — occurring just days after the FISA search — strongly suggesting contamination or manipulation (EXHIBIT G). The jury was never

presented with this critical forensic evidence due to the undisclosed agreement between defense counsel and the prosecution.

## *C. Prejudice and Constitutional Violation*

The secret agreement substantially prejudiced Petitioner's defense. The jury was left with the false impression that this case arose from a conventional criminal investigation, unaware that it was the product of a failed national security investigation and secret FISA surveillance. The government presented the case as a straightforward prosecution, when in fact:

1. The case originated from secret FISA-authorized surveillance targeting Petitioner as part of a failed espionage investigation;
2. The forensic evidence relied upon by the government was tainted by post-search alterations;
3. Defense counsel, despite explicit instructions from Petitioner and corroborating witness Chris Elliott (EXHIBIT F), suppressed this vital information from the jury under a secret agreement;
4. The jury was deprived of highly material evidence concerning both the government's investigative misconduct and the unreliability of the forensic evidence.

Had the jury been made aware of these facts — especially in light of the fact that the defense had, pretrial, actively challenged the validity of the FISA evidence (Exhibit B & Exhibit C) — there is a substantial probability that the outcome would have been different. Instead, the jury was left with a distorted picture of the investigation, free from any challenge to its origins or the integrity of the digital evidence.

The agreement Counsel Werkman made with the government was made absent any quid-pro-quo. It served the government's case, but provided nothing of value to the Petitioner. To the contrary, it deprived the Petitioner the opportunity to challenge the validity of the search.

Had Counsel argued the absence of origin for the subsequent search warrant, used in its case-in-chief, it would have caused jurors to conclude that – absent the FISA Warrant – the search of the Petitioner's home was conducted without Probable Cause.

No reasonable jury could unanimously convict on the basis of a single file found by the government without Probable Cause to search the Petitioner's private property.

This newly discovered evidence, demonstrating that defense counsel concealed the FISA origins and that the government failed to disclose

forensic contamination, was unavailable to Petitioner during trial or the first habeas proceeding. It is material, non-cumulative, and if presented to a reasonable juror, would likely have resulted in a different verdict, satisfying the prima facie standard under 28 U.S.C. § 2255(h)(1).

### ***D. Conclusion***

The newly discovered evidence demonstrates that Petitioner's counsel did not simply make a strategic choice, but affirmatively **abandoned a constitutional challenge** that had been fully briefed, argued, and opposed pretrial — doing so under a secret agreement without Petitioner's consent. This is not a case of hindsight, but of actual **structural breakdown**. The record now shows that:

1. Counsel filed and litigated critical FISA suppression motions (Exhibit B & Exhibit C);
2. Counsel thereafter secretly agreed to abandon these motions without Petitioner's knowledge;
3. Petitioner, with the support of trial observer Chris Elliott (EXHIBIT F), repeatedly instructed counsel to raise the FISA issues during trial;

4. Counsel refused, concealing both the pretrial agreement and subsequently discovered forensic contamination evidence (EXHIBIT G).

This constitutes a **structural defect** under *United States v. Cronic*, ineffective assistance under *Strickland v. Washington*, and a due process violation under *Brady* and *Napue*. The prejudice is plain: the jury was misled about the origin of the case, the chain of custody, and the reliability of the government's forensic evidence.

This newly discovered evidence, demonstrating that defense counsel concealed the FISA origins and that the government failed to disclose forensic contamination, was unavailable to Petitioner during trial or the first habeas proceeding. It is material, non-cumulative, and if presented to a reasonable juror, would likely have resulted in a different verdict, satisfying the prima facie standard under 28 U.S.C. § 2255(h)(1). Reconsideration is necessary to cure this constitutional violation.

This newly discovered evidence regarding the undisclosed FISA origins of the investigation satisfies the prima facie standard under § 2255(h)(1) because no reasonable juror would have convicted if aware of the

government's undisclosed agreement to suppress the case's true origin and the forensic contamination.

**2. Coerced Ineffectiveness Waiver**

***A. Newly Discovered Evidence***

Post-conviction review revealed, for the first time, that two weeks after the trial ended, Petitioner was confronted with a waiver and conflict disclosure that had never been presented during trial proceedings. These materials included a waiver letter dated January 4, 2016 shielding Werksman from ineffective assistance claims (EXHIBIT H) and a conflict disclosure sent by AUSA Anthony Lewis on December 29, 2015 (EXHIBIT I). The record now confirms that Petitioner was unaware of Werksman's undisclosed conflict throughout trial. These documents were inaccessible prior to the first § 2255 motion due to counsel's concealment and Petitioner's limited post-conviction file access.

According to documents only recently made available to the Petitioner, Workman had knowledge of this conflict as early as December 9, 2015, but only made the Petitioner aware on December 29, following the conclusion of trial. Mr Werksman delivered a copy of the same waiver letter Dated January 4, 2016 by courier to Petitioners home on December 29, 2015 and

spoke with Petitioner regarding the waiver the same day. Petitioner refused to sign waiver on December 29th and another time that week before finally being coerced under duress to sign on January 4th, 2016.

Petitioner had also preserved a contemporaneous letter to his forensic expert Jeff Fischbach (EXHIBIT J) describing the coercion on the same day the waiver was signed. While previously known, this letter only became material when paired with access to the later-discovered waiver (EXHIBIT H) and conflict disclosure (EXHIBIT I). Together, these documents provide a real-time corroboration of the coercion and strengthen Petitioner's showing of prejudice.

***B. Substance and Significance***

Prior to and throughout trial, Petitioner consistently requested defense counsel challenge the FISA-derived evidence and expose the unlawful origins of the investigation. In response, defense counsel Mark Werksman repeatedly assured Petitioner that the FISA surveillance and the inception of the investigation would be fully addressed before and during trial.

Petitioner, joined by trial observer Chris Elliott (EXHIBIT F), directly and persistently urged counsel to present the FISA issue to the jury.

Unbeknownst to Petitioner, counsel had already entered into an agreement with the prosecution to conceal the FISA matter (EXHIBIT D). This

undisclosed agreement fundamentally undermined Petitioner's ability to present a complete defense.

Two weeks after trial concluded, Petitioner was confronted with a conflict disclosure (EXHIBIT I) revealing an undisclosed relationship between government forensic witness Bruce Pixley and Werksman's law firm.

Following this disclosure, Petitioner was coerced into signing a waiver (EXHIBIT H) that shielded Werksman from ineffective assistance of counsel claims. Petitioner documented this coercion in real time through a contemporaneous letter to his forensic expert Jeff Fischbach (EXHIBIT J).

The waiver was not entered into voluntarily but was extracted under threat that counsel would cease all post-trial work unless it was signed.

This sequence of events demonstrates that Petitioner was denied the opportunity to pursue an ineffective assistance claim and deprived of the ability to challenge trial counsel's undisclosed agreement, conflict of interest, and failure to present critical defense evidence.

***C. Effect on the Outcome***

The combination of Werksman's undisclosed conflict and the post-trial coerced waiver deprived Petitioner of any opportunity to raise ineffective assistance claims, both on direct appeal and post-conviction.

Worse still, the conflict influenced trial strategy itself, as Werksman had a strong incentive to avoid exposing forensic flaws tied to government witness Bruce Pixley – an individual his firm was relying upon in other matters.

While on the stand, the government's witness, Bruce Pixley, testified, as if in rebuttal to arguments not yet made by the defense, which should not have been known to the government's witness, unless he was privy to defense strategy. Testimony which went largely unchallenged, either in cross-examination, or in rebuttal testimony by the Petitioner's expert, Jeff Fischbach, who attended trial but was never put on the stand to testify.

The jury heard unchallenged forensic testimony that was central to the government's case, unaware that defense counsel was laboring under a concealed conflict of interest.

Had the jury known about the conflict, and had Petitioner been free to later challenge counsel's performance, there is a reasonable probability that no conviction would have occurred.

Although advising of potential conflict and simultaneously disputing conflict existed, in his letter Worksman did make the following statement, "you have the right to consult with independent counsel regarding whether

and to what extent, if any, Alan's relationship with Pixley causes a conflict in my representation of you. And, of course, you have the right to seek new counsel at any time."

Had the Petitioner been advised of the conflict *before or during* trial, he would have requested the court intervene *before* Mr. Pixley be allowed to testify with possible advance knowledge of the petitioner's defense strategy.

This newly discovered evidence satisfies § 2255(h)(1) by showing Petitioner was denied conflict-free counsel and a constitutionally fair trial.

***D. Conclusion***

The post-trial coerced waiver of Petitioner's right to assert ineffective assistance of counsel—executed under duress and without informed consent—served to shield a material conflict of interest from judicial review. The suppression of this conflict directly affected the defense's ability not only to prevent testimony fed by breach of privilege, but also to challenge the government's key forensic witness in any capacity, before, during, or after trial.

Although the existence of this coerced waiver letter was known to the Petitioner, he did not have physical access to it until his own file was made available to him by pro-bono counsel in 2024. Access to this waiver letter, corroborating email, and conflict disclosure were not available at the time

of the original motion, and thus, newly discovered to the Petitioner for all intents and purposes. If allowed to be proven to the court, this evidence demonstrates a structural defect in Petitioner's trial and satisfies the standard under § 2255(h)(1).

This newly discovered evidence, unavailable during Petitioner's first § 2255 motion, is material, non-cumulative, and sufficient such that no reasonable juror, properly informed, would have convicted. Accordingly, Petitioner satisfies the prima facie standard under § 2255(h)(1) because the newly discovered evidence of the coerced waiver reveals a critical constitutional violation that would have prevented conviction if presented to a reasonable juror.

**3. Rule 16 Violations, Ineffective Assistance of Counsel, and Failure to Request Continuance**

Petitioner submits newly discovered evidence that was unavailable at the time of trial or the original § 2255 proceeding, demonstrating clear violations of **Federal Rule of Criminal Procedure 16**, **ineffective assistance of counsel** under the **Sixth Amendment**, and a denial of

**due process** under the **Fifth Amendment**. This evidence meets the standard for reconsideration under 28 U.S.C. § 2255(h)(1), as it establishes by clear and convincing evidence that no reasonable juror would have found Petitioner guilty if the evidence had been available.

---

## ***A. Rule 16 Violations by the Government***

The government violated **Rule 16(a)(1)(G)** by delivering its forensic expert's report—authored by Bruce Pixley—on the **eve of trial**. Although dated **November 24, 2015**, the report was provided to defense on the **Thanksgiving holiday**. With the FBI lab being closed over the holiday weekend, defense forensic expert could not even start to gather data until Monday November 30, 2015. A problem with the CD burner at the FBI lab and the inability to take the needed data with him further delayed the analysis. The attorneys had to pick up the CD the next day then overnight the CD to its defense forensic expert who did not receive the data to start his analysis until December 2, 2015. This gave defense counsel **only two business days** to review and respond before trial commenced on **December 4, 2015** (**EXHIBIT K**).

The government further compounded this violation by **supplementing exhibits and demonstratives after trial had begun**, in violation of the trial court's ruling that no new evidence would be introduced after Pixley's report. An email from co-counsel **Inbal Zeevi**, dated **December 7, 2015**, documents the defense's objection to these last-minute disclosures (**EXHIBIT L**).

---

***B. Rule 16(b) Compliance Impeded for the Defense Expert***

Petitioner's forensic expert, **Jeff Fischbach**, was prevented from complying with **Rule 16(b)(1)(C)** due to the government's untimely and incomplete disclosures. As late as **December 5, 2015**, Mr. Fischbach emailed defense counsel seeking a list of the charged or chargeable files and their full paths—critical information he still lacked just two days before trial (**EXHIBIT M**).

The government's own **discovery letter dated December 6, 2015** confirms that additional materials were still being disclosed on the eve of trial, further depriving the defense of the time needed for expert analysis (**EXHIBIT N**).

Although Mr. Fischbach made key forensic findings—including **post-seizure alterations to the January 2014 forensic image** and indications that the **FBI's WriteBlocker had malfunctioned**, potentially corrupting the digital evidence—he was not permitted to testify. His findings were relayed in a **December 7, 2015 email from Mr. Werksman to the prosecution**, but were never presented to the jury (**EXHIBIT G**).

In addition, newly discovered evidence, including images of the CD containing the government's forensic evidence, confirms that Petitioner's forensic expert Jeff Fischbach **did not receive the critical discovery materials until December 2, 2015**, just two days before trial commenced on December 4, 2015. Although Fischbach visited the FBI laboratory on November 30, 2015, intending to collect the forensic images, the FBI's equipment was unable to burn the data to a CD that day. The CD was not burned until December 1, 2015, and was then physically retrieved by attorney Inbal Zaivi and overnighted to Fischbach, arriving on December 2, 2015. Combined with the prior late receipt of the Pixley forensic report dated November 24, 2015 **(see EXHIBIT K)**, and the **delivery of the forensic data on the eve of trial (see EXHIBIT O)**, these circumstances confirm that the defense expert was deprived of any

meaningful opportunity to analyze the government's forensic evidence or prepare to testify effectively. This directly supports the claim that counsel's failure to seek a continuance was prejudicial and constitutionally deficient.

---

## ***C. Ineffective Assistance of Counsel: Failure to Request a Continuance***

Defense counsel's **failure to seek a continuance** under these circumstances constitutes **deficient performance** under *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel knew:

- The forensic expert **had not received key data until December 2, 2015**, just two days before trial (**EXHIBIT O**),
- The defense expert was **unprepared to produce a Rule 16 disclosure** or complete his analysis, and
- The prosecution's late disclosures had materially prejudiced the defense's ability to respond.

Despite this, counsel declined to seek even a brief continuance, depriving Petitioner of the ability to challenge the forensic evidence or introduce rebuttal testimony. The record reflects that defense counsel

**misunderstood or failed to act on the expert's critical findings**, effectively **silencing exculpatory testimony** at a crucial moment (**EXHIBIT G**).

---

## ***D. Cumulative Impact and Prejudice***

Together, the government's discovery misconduct and counsel's refusal to seek a continuance undermined Petitioner's right to a fair trial. The jury never heard:

- That **forensic data was altered** after government seizure,
- That **standard forensic safeguards (WriteBlockers) failed**,
- That the defense expert was **prevented from completing his analysis or testifying** due to late disclosures,
- And that defense counsel was **wholly unprepared** to meet the government's forensic case.

This constitutes a **due process violation** under the **Fifth Amendment**, and a violation of Petitioner's **Sixth Amendment right to effective assistance of counsel** and to present a defense.

---

***E. Conclusion***

The exhibits presented in this section constitute **newly discovered evidence** under § 2255(h)(1). These violations were not previously discoverable due to:

- Late delivery and concealment of critical documents by both the government and defense counsel,
- Defense counsel's failure to preserve or present the forensic expert's findings,
- And Petitioner's lack of access to trial files until recent post-conviction review.

This evidence, if proven, would establish that **no reasonable juror would have convicted Petitioner**, and it justifies reconsideration of the Court's denial of his application to file a successive § 2255 motion.

The newly discovered evidence, unavailable during Petitioner's first § 2255 motion, is material, non-cumulative, and sufficient such that no reasonable juror, properly informed, would have convicted. It is related to the suppressed forensic irregularities and the denial of a meaningful continuance and meets the prima facie standard of § 2255(h)(1) because it

would have allowed the jury to meaningfully challenge the government's evidence and likely avoided conviction.

Moreover, the continuance denial directly enabled the government's Brady violations, as the defense was deprived of the time needed to uncover, analyze, and present exculpatory forensic evidence that had been wrongfully withheld.

This violation, when viewed in combination with the suppressed exculpatory evidence and Brady/Napue violations detailed in Section V.B (Suppression of Exculpatory Evidence and Related Brady/Napue Violations), forms part of a broader pattern of discovery misconduct that denied Petitioner a fair opportunity to challenge the government's forensic case and resulted in cumulative prejudice.

**4. Juror Bias – Law Enforcement Connections**

***a. Newly Discovered Evidence***

In 2024, Petitioner discovered handwritten seating chart notes from both defense counsel and his own voir dire tracking records, which had been stored in an unreviewed portion of his trial file. This prompted Petitioner to re-examine the voir dire transcript, revealing Juror Hamby's actual statements regarding his law enforcement connections. These materials

were not reviewed in prior proceedings and constitute newly discovered evidence under § 2255(h).

The evidence confirms that Scott Hamby, the lead juror, was improperly seated despite demonstrating clear law enforcement bias. Petitioner's notes (EXHIBIT P) and defense counsel's notes (EXHIBIT Q) both documented the juror's law enforcement associations. Yet, trial counsel failed to act on this information.

***b. Substance and Significance***

During voir dire, Juror Hamby openly disclosed his direct and indirect ties to law enforcement:

"I served for just a few months in the Long Beach Marine Patrol which is a paramilitary organization that patrols the bay and the areas around there. And I have several friends who are Long Beach police officers if you want to hear everything." (Voir Dire Transcript, pg. 38, line 21 through pg. 39, line 1; see EXHIBIT R).

These statements establish that the lead juror had both paramilitary law enforcement experience and active relationships with local police. Given that the case hinged on the credibility of law enforcement witnesses and forensic agents, the risk of bias was substantial and disqualifying.

Despite Petitioner explicitly requesting trial counsel to remove this juror, counsel falsely advised that no challenges remained. In fact, for-cause challenges are unlimited under Rule 24(b) of the Federal Rules of Criminal Procedure. The juror was seated and ultimately served as lead juror.

***c. Effect on the Outcome***

The seating of a biased lead juror directly undermined the fairness of the trial. The juror's leadership role likely amplified any predisposition in favor of law enforcement testimony, compromising the integrity of the verdict. The evidence confirms that trial counsel was ineffective for failing to object and that the trial was tainted by a structurally biased jury.

***d. Conclusion***

The juror's own statements, documented in the transcript and supported by Exhibits P, Q, and Z, establish both actual and implied bias. Coupled with ineffective assistance of counsel, this denied Petitioner his constitutional right to an impartial jury.

This evidence is material, non-cumulative, and satisfies the prima facie showing required by § 2255(h)(1) because the juror's bias directly undermined Petitioner's right to an impartial jury, a structural defect. Had

the jury been properly informed, there is a reasonable probability that no reasonable juror would have convicted.

When considered alongside the other newly discovered constitutional violations presented in this motion, it forms part of a **cumulative pattern that rendered the entire trial fundamentally unfair**.

**5. Failing to Present Forensic Expert or Evidence**
**Newly discovered evidence establishes that Petitioner Keith Gartenlaub was denied effective assistance of counsel when his trial attorney, Mark Werksman, failed to present the testimony of Petitioner's retained forensic expert, Jeff Fischbach, or introduce critical exculpatory forensic findings that undermined the government's theory of the case.**

This fact is corroborated by Chris Elliott, a friend of Petitioner who personally observed trial proceedings and witnessed Petitioner persistently request that trial counsel present Mr. Fischbach's testimony to the jury. Mr. Elliott observed Werksman refuse these requests despite Petitioner's continued objections. (See EXHIBIT F, Declaration of Chris Elliott).

This failure was not strategic, but rather the result of unpreparedness, time constraints, and counsel's refusal to seek a continuance—conditions

revealed in post-trial communications and case records that were not previously available to Petitioner.

Petitioner has obtained documentation demonstrating that his forensic expert did not receive access to the government's forensic evidence until two days before trial began. In a December 5, 2015 email, Mr. Fischbach requested a list of charged or chargeable items, indicating he was still unaware of which digital files were being attributed to Petitioner at that late stage【EXHIBIT M】. Further, Werksman never submitted a written Rule 16 disclosure of the defense expert's findings, forcing Fischbach to convey his analysis verbally to counsel under extreme time pressure【EXHIBIT S】.

Despite discovering that the forensic images had been altered days after the FBI's search—evidence indicating the government's forensic procedures were unreliable—Werksman neither moved to suppress this evidence nor called Mr. Fischbach to testify. He also refused to allow Fischbach to sit at the defense table, even after both expert and client insisted on it. This deprived the defense of real-time expert consultation as the government's star witness, Bruce Pixley, presented contested and misleading forensic conclusions to the jury.

The government's case hinged on the assumption that Petitioner knowingly possessed contraband files. However, the suppressed forensic evidence showed those files originated elsewhere, were never accessed, and predated their presence on Petitioner's devices. By failing to introduce this evidence or call the expert prepared to explain it, counsel allowed the jury to hear only the government's flawed narrative.

**Without Pixley's unchallenged testimony, no reasonable juror would have convicted.**

Newly discovered discovery letters from the prosecution, dated December 3 and December 6, 2015, confirm that critical witness statements, forensic exhibits, and surveillance materials were delivered to the defense just days before trial【EXHIBIT T】【EXHIBIT U】. These documents substantiate Petitioner's claim that the defense team was overwhelmed in the final days before trial, leaving his expert unprepared and his counsel incapable of meaningfully challenging the prosecution's forensic case.

Had this forensic evidence been introduced through Fischbach's testimony, a reasonable factfinder would have found significant doubt regarding the government's claims. The jury never heard that the data was altered post-seizure or that the files were not linked to Petitioner's actions. This

omission undermines confidence in the outcome and satisfies both prongs of Strickland v. Washington, 466 U.S. 668 (1984): counsel's performance was deficient, and there is a reasonable probability that the result would have been different.

This newly discovered evidence, unavailable during Petitioner's first § 2255 motion, is material, non-cumulative, and sufficient such that no reasonable juror, properly informed, would have convicted. The omission of exculpatory expert testimony directly contributed to a wrongful conviction and violated Petitioner's Sixth Amendment right to present a meaningful defense. Accordingly, Petitioner satisfies the prima facie showing required under 28 U.S.C. § 2255(h)(1) for this claim.

This newly discovered forensic evidence and the suppression of the defense expert's opportunity to fully examine the data satisfies § 2255(h)(1) by demonstrating that a properly informed jury would have likely acquitted Petitioner.

**B. PROSECUTORIAL MISCONDUCT**

**The government's misconduct in this case was not only independently prejudicial but also compounded the prejudice caused by trial counsel's constitutionally deficient performance.**

**The following claims are based on newly discovered evidence obtained after Petitioner's first § 2255 motion and establish a prima facie showing under § 2255(h)(1).**

**1. Suppression of Exculpatory Evidence**

Newly discovered evidence, including the post-trial declaration of forensic expert **Jeff Fischbach (EXHIBIT S)** and corroborating observations from **Sara Naheedy (EXHIBIT V)**, establishes that the government failed to disclose critical exculpatory forensic information. **Fischbach details that defense counsel did not receive necessary forensic data until just days before trial, leaving insufficient time to properly analyze the evidence.** His declaration explains that forensic irregularities, including the fact that files predated their presence on Petitioner's devices and were never accessed, were discoverable but never presented to the jury due to the government's late disclosures. **Naheedy's affidavit further confirms the prosecution's strategic pressure on the defense in the critical pretrial phase, reinforcing the prejudicial effect of these suppressed disclosures. This suppression was independently prejudicial and further compounded by counsel's failure to move for a continuance and present Fischbach's findings.**

**2. Retaliatory Motive and Coercion**

Newly discovered evidence, including the **Prosecution Retaliation Summary (EXHIBIT W), the September 12, 2014 Proffer Letter (EXHIBIT X), the Werksman Email (EXHIBIT Y), the Sara Naheedy Declaration (EXHIBIT V), and the detailed Timeline of Retaliatory Prosecution Events (Appendix D)**, demonstrates that the government pursued this prosecution for improper retaliatory purposes unrelated to the charged offenses.

Naheedy recounts that, on the day of Petitioner's arrest, prosecutors explicitly offered to ***"drop these charges if he tells us what he did on the C-17,"***, confirming that the government's focus was on extracting national security information rather than pursuing the charged conduct **(EXHIBIT V)**. Prosecutors reiterated this motive directly to Naheedy, expressing concern solely with national security, not the alleged criminal acts.

**The retaliatory progression is clearly documented:** The **Proffer Letter (EXHIBIT X)** conditioned any potential resolution on providing national security cooperation; the **Werksman Email (EXHIBIT Y)** shows trial counsel acknowledging that the government's primary interest was national security; and **Appendix D** lays out the timeline, demonstrating that prosecutors

withheld indictment while seeking cooperation, only pursuing charges after Petitioner declined to provide national security information.

This conduct falls squarely within the prohibition on prosecutorial vindictiveness under **Blackledge v. Perry, 417 U.S. 21 (1974)** and **United States v. Goodwin, 457 U.S. 368 (1982)**. The sequence of events creates a strong inference that Petitioner was penalized for exercising his right not to cooperate on unrelated national security matters.

This improper motive was never disclosed to the jury, nor addressed by trial counsel, further compounding the prejudice. This misconduct was both **independently unconstitutional** and **aggravated trial counsel's ineffectiveness**, rendering the proceeding fundamentally unfair.

This newly discovered evidence, unavailable during Petitioner's first § 2255 motion, is material, non-cumulative, and sufficient such that no reasonable juror, properly informed, would have convicted. Accordingly, Petitioner satisfies the prima facie showing required under 28 U.S.C. § 2255(h)(1) for this claim

**3. Brady and Napue Violations**

***A. Newly Discovered Evidence***

Newly discovered evidence establishes that the government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and Napue v. Illinois, 360 U.S. 264 (1959), by suppressing material impeachment evidence and knowingly permitting false and misleading testimony by its key forensic witness, Bruce Pixley.

Mid-Trial forensic analysis, declarations, and internal communications demonstrate that the FBI's forensic evidence was flawed, with indications of altered data and forensic irregularities (EXHIBIT G). Defense expert Jeff Fischbach confirmed that the forensic images were altered after seizure, and that standard forensic protocols failed or were not followed (EXHIBIT S). Despite these findings, Pixley provided trial testimony that omitted or misrepresented these defects.

Pixley testified that the files would have taken "days" to download, strongly suggesting deliberate conduct. However, he later conceded under cross-examination that he could not determine who downloaded the files, when they were accessed, or whether they were ever viewed at all (EXHIBIT S). He further testified about so-called file "movements" without evidentiary

basis, misleading the jury into believing that Petitioner intentionally curated the contested files.

Additionally, it has now been confirmed that Pixley had a conflict of interest due to a prior professional relationship with a partner at Werksman's law firm, which the prosecution failed to disclose (EXHIBIT I). This conflict compromised Pixley's credibility and undermined the fairness of the adversarial process.

### ***B. Materiality of the Suppressed Evidence***

This suppressed and misleading testimony was material because the government's case relied heavily on forensic evidence to establish knowing possession of contraband. Pixley's misleading statements, coupled with the undisclosed forensic flaws, deprived the jury of critical information that would have cast doubt on the integrity of the government's case.

### ***C. Prejudice and Constitutional Violation***

The prosecution's failure to disclose Pixley's conflict of interest and forensic irregularities, combined with its allowance of materially misleading testimony, resulted in a due process violation. The defense was prevented from effectively cross-examining the government's key expert and exposing flaws in the forensic evidence.

***D. Prima Facie Showing under § 2255(h)(1)***

The newly discovered impeachment evidence—including Exhibit D, Exhibit O, and Exhibit M—is material, non-cumulative, and sufficient to establish that no reasonable juror, properly informed of the forensic flaws and Pixley's undisclosed conflict, would have returned a guilty verdict. Accordingly, Petitioner satisfies the prima facie standard under 28 U.S.C. § 2255(h)(1).

Accordingly, Petitioner respectfully submits that this newly discovered impeachment evidence satisfies the prima facie standard under 28 U.S.C. § 2255(h)(1) because it is material, non-cumulative, and demonstrates that no reasonable juror, properly informed, would have returned a guilty verdict.

## VI. WHY THIS EVIDENCE WAS NOT RAISED EARLIER

Some of the newly presented evidence was discovered as early as **2020**, during a review conducted with Petitioner's pro bono attorney. At that time, counsel identified at least two viable grounds for habeas relief: **ineffective assistance of counsel** and **FISA-related suppression**. As further

investigation unfolded, it became clear that the case involved **multiple overlapping constitutional violations**, including prosecutorial misconduct, forensic irregularities, juror bias, and Brady violations.

However, just **days before the filing deadline for the § 2255 motion**, Petitioner's pro bono attorney informed him that he did **not have the bandwidth or capacity to litigate all meritorious claims**. He chose to file solely on the limited issue of FISA-based suppression. This strategic narrowing of claims was not done with Petitioner's informed consent and resulted in the **abandonment of substantial constitutional violations**. Petitioner was left without the ability to correct this decision or seek further assistance in the time remaining. This failure constituted **ineffective assistance of post-conviction counsel** and directly prevented Petitioner from raising valid claims during his initial § 2255 motion.

Petitioner's prior pro bono attorney, Tor Ekeland, has submitted a sworn declaration (Exhibit Z) confirming that Petitioner wished to raise all constitutional violations, including ineffective assistance of counsel, prosecutorial misconduct, juror bias, and FISA suppression claims. However, counsel was unable to do so due to limited resources and time constraints. Importantly, Mr. Ekeland affirms that Petitioner did not waive

or abandon these claims. Rather, they were left unpresented due to counsel's inability to pursue them (EXHIBIT Z).

Between 2021 and 2025, Petitioner independently reviewed trial materials, defense correspondence, and unexamined case files. He uncovered and organized evidence that was:

- **Previously withheld** by counsel (e.g., EXHIBIT I – conflict disclosure and waiver);

- **Recently documented**, such as EXHIBIT S – the affidavit of forensic expert Jeff Fischbach, which was created for this motion in 2025. While the facts and observations contained in the affidavit were known to Petitioner through earlier discussions with Mr. Fischbach, they were not previously memorialized or submitted in a sworn declaration.

- **Recently obtained or created**, such as EXHIBIT V (Affidavit of attorney Sara Naheedy, 2025), EXHIBIT F (Affidavit of court observer Chris Elliott, 2025) ;

- Or **discovered during a re-evaluation of trial materials in 2024**, such as Exhibits **P** and **Q**—handwritten jury seating chart notes from Petitioner and defense counsel. These notes were located in a trial binder

that had not been previously reviewed or catalogued and directly support Petitioner's claim of juror bias.

During this period, Petitioner attempted to submit supplemental or independent filings. However, the **Clerk of the Court refused to accept pro se submissions** on the grounds that Petitioner remained formally represented in an active habeas proceeding. As a result, Petitioner was **procedurally barred** from raising these additional claims until his original motion was fully adjudicated and dismissed in **December 2024**.

A **detailed timeline of these events** and discoveries is provided in **Appendix C**, which illustrates Petitioner's diligent efforts to uncover and present this evidence despite significant procedural and logistical barriers.

Petitioner has acted diligently at all times. The failure to raise these claims earlier was the result of **attorney abandonment and procedural constraints**, not any lack of effort or awareness. The evidence supporting this motion was either unavailable or undiscovered during prior proceedings. It is presented here for the first time in full compliance with 28 U.S.C. § 2255(h)(1).

## VII. CUMULATIVE IMPACT & MISCARRIAGE OF JUSTICE

The newly discovered evidence presented in this motion does not simply reveal isolated trial errors. Rather, it exposes a pattern of constitutional violations and procedural misconduct that, when considered together, rendered the entire proceeding fundamentally unfair. These violations, individually and cumulatively, undermine confidence in the reliability of the verdict.

- The suppression of exculpatory evidence, including forensic irregularities and impeachment evidence regarding the government's key forensic witness;
- Ineffective assistance of counsel, including the failure to investigate and present expert forensic testimony, failure to object to juror bias, and failure to challenge the FISA-derived evidence;
- A coerced waiver of the right to effective assistance of counsel following trial, shielding trial counsel's deficient performance from review;
- Undisclosed conflicts of interest between trial counsel and a key government witness;
- The seating of a biased lead juror with law enforcement affiliations;
- Prosecutorial misconduct, including retaliatory prosecution and improper suppression of critical evidence.

**Cumulatively, these newly discovered facts demonstrate that Petitioner's trial was not simply flawed, but fundamentally unreliable under any standard of due process or Sixth Amendment review. Petitioner has met the prima facie standard under § 2255(h)(1) and established a substantial showing of the denial of a constitutional right.**

## VIII. RELIEF REQUESTED

Petitioner respectfully requests that this Court:

1. **Reconsider its March 18, 2025 denial** of Petitioner's application for leave to file a second or successive motion under 28 U.S.C. § 2255;
2. **Grant Petitioner leave to file a second or successive § 2255 motion** based on the newly discovered evidence set forth herein, which satisfies the requirements under § 2255(h)(1);
3. **Grant any other relief** this Court deems just and appropriate, including referral for evidentiary development and appointment of counsel.

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and 32(g)(1) because:

- This motion contains [8,324] words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).
- This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Georgia, 14-point font.

Dated: March 31, 2025

Respectfully submitted,

/s/ Keith Gartenlaub
Keith Gartenlaub, Pro Se
9 Maverick, Irvine, CA 92602

## APPENDIX A – INDEX OF EXHIBITS

| Exhibit | Description | Date | Cited Sections |
|---|---|---|---|
| A | Tanscript of Sentencing Hearing on 2016-8-29 | 2016-08-29 | Section I; Section III |
| B | Notice of filing Quash, Supress FISA, Traverse, and Franks | 2015-02-15 | Section V.A.1 |
| C | GovtUnclassified_DisclosureOfFISA | 2015-05-04 | Section V.A.1 |
| D | Undisclosed FISA suppression agreement | 2015-11-16 | Section V.A.1; Section V.A.2 |
| E | Affirming he was unaware of FISA suppression | 2025-03-31 | Section V.A.1 |
| F | Declaration of Chris Elliott Court observer regarding trial | 2025-03-31 | Section V.A.1; Section V.A.2; Section V.A.5; Section VI |
| G | Fishbach discloure thru Mark Werksman. Showed altered post-search drive images | 2015-12-07 | Section V.A.1; Section V.A.3; Section V.B.3 |
| H | Signed under pressure to suppress IAC claim | 2016-01-04 | Section V.A.2 |
| I | Pixley conflict and Werksman firm involvement | 2015-12-29 | Section V.A.2; Section V.B.3; Section VI |
| J | Signed letter from Keith to Jeff decribing coercion | 2016-01-04 | Section V.A.2 |
| K | Cover sheet for Forensic examiner Pixley Report showing 10/24/2014 | 2015-11-24 | Section V.A.3 |
| L | Earlier evidence disclosure showing delay | 2015-12-07 | Section V.A.3 |

| Exhibit | Description | Date | Cited Sections |
|---|---|---|---|
| M | Expert requested chargeable file list days before trial | 2015-12-05 | Section V.A.3; Section V.A.5 |
| N | Government has not received Rule 16 disclosure Dec 6, 2015. Trial started Dec 4, 2015 | 2015-12-06 | Section V.A.3 |
| O | Front of CD burned at FBI lab for Jeff Fischbach- Did not receive until 12/2/15 | 2015-12-01 | Section V.A.3 |
| P | Confirms law enforcement bias on jury | 2015-12-04 | Section V.A.4 |
| Q | Identifies lead juror with law enforcement ties | 2015-12-04 | Section V.A.4 |
| R | Excerpt of Transcipt Scott Hamby | 2015-12-04 | Section V.A.4 |
| S | Forensic expert denied time and opportunity to testify | 2025-03-31 | Section V.A.5; Section V.B.1; Section V.B.3; Section VI |
| T | Mass document dump pre-trial | 2015-12-03 | Section V.A.5 |
| U | Second wave of late evidence disclosure | 2015-12-06 | Section V.A.5 |
| V | Confirms prosecutor's coercive statement and intent | 2025-03-30 | Section V.B.1; Section V.B.2; Section VI; Section VIII |
| W | Summary of Retaliatory and Coercive Prosecutorial Conduct | 2025-03-26 | Section V.B.2 |
| X | Proffer letter to meet with prosecution regarding nation security concerns | 2014-09-12 | Section V.B.2 |

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re:
KEITH GARTENLAUB,
Petitioner.

Case No.: 24-7437
(District Court Case No. 8:14-cr-00173-CAS-1)

**APPENDIX B – LETTER OF CORRESPONDENCE**

The following document is a Letter of Correspondence submitted by Petitioner to the Clerk of Court on March 14, 2025. It was intended to clarify procedural concerns and document Petitioner's efforts to comply with filing requirements and communicate critical updates related to Case No. 24-7437.

Petitioner includes this correspondence to supplement the record, demonstrate his diligence, and preserve the procedural history relevant to the timing and scope of this motion. This document is not offered as evidentiary material but as a procedural appendix.

Letter of Correspondence to Clerk of Court (March 14, 2025)

Keith Gartenlaub
9 Maverick
Irvine, CA 92602

(949) 880-1067
kgartenlaub@gmail.com

March 14, 2025

Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

RE: Request for Docket Corrections in Case No. 24-7437

Dear Clerk of Court,

I am writing to formally request corrections to the docket in my case, United States v. Keith Gartenlaub, Case No. 24-7437, as previous attempts to address these issues individually have resulted in further confusion. Due to delayed filings and procedural inconsistencies, I seek the following corrections to ensure clarity and accuracy in the record.

Withdrawal of Specific Docket Entries:

- Docket Entry #6
- Docket Entry #7
- Docket Entry #8
- Docket Entry #11
- Docket Entry #14

Correction of Docket Entry #13:

Docket Entry #13 currently contains four motions that were filed separately, but they were incorrectly merged into a single compressed entry. I request that the following motions be separated and filed individually as follows:

- Docket Entry #13-01: To remain as originally filed as Docket Entry #13.
- Docket Entry #13-02: Has been superseded; I request that this entry be withdrawn and not considered.
- Docket Entry #13-03: To be refiled and considered separately.

- Docket Entry #13-04: To be refiled and considered separately.

These corrections are necessary to ensure an accurate record of my filings and to prevent further confusion in the adjudication of my case. I appreciate the Court's

attention to this matter and respectfully request that these changes be made at the earliest convenience.

If any further clarification is needed, I am available at the contact information provided above. Thank you for your time and assistance in addressing these docketing issues.

Respectfully submitted,

/s/ Keith Gartenlaub
Petitioner, Pro Se

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re:
KEITH GARTENLAUB,
Petitioner.

Case No.: 24-7437
(District Court Case No. 8:14-cr-00173-CAS-1)

## APPENDIX C -TIMELINE OF KEY EVENTS AND DISCOVERIES

| Date / Timeframe | Event or Discovery | Legal Relevance |
|---|---|---|
| Dec 2015 | Government discloses forensic evidence and expert data late (Exhibits L, N) | Rule 16 violation, forensic expert suppression |
| Jan 2016 | Petitioner coerced into signing conflict waiver under duress (EXHIBIT J) | IAC and waiver coercion claim |
| 2020 | Review with pro bono attorney; multiple claims identified | Start of post-trial diligence; later attorney abandonment |
| Late 2020 | Pro bono attorney files 2255 on FISA only (Exhibit Z) | Abandonment of remaining claims; procedural limitation |
| 2021–2023 | Petitioner independently reviews trial materials and correspondence | Ongoing effort to locate and interpret missing documents |
| 2024 | Juror bias notes discovered in trial binder (Exhibit P, Exhibit Q) | Supports juror misconduct claim |
| 2024 | Defense file reveals conflict letter (EXHIBIT I) and Pixley suppression issues | Supports conflict of interest and Brady claims |
| Dec 2024 | Original § 2255 motion denied | Resets procedural clock; Petitioner regains right to file |
| Mar 2025 | Affidavits secured: Naheedy, Fischbach, Ekeland, Elliott (Exhibit F, S, V, Z) | Substantiates coercion, forensic issues, and counsel abandonment |

## APPENDIX D – TIMELINE OF RETALITORY PROSECUTION EVENTS

United States v. Keith Gartenlaub

Case No. 24-7437

August 27, 2014 – Keith Gartenlaub is arrested.

August 27, 2014 – Prosecutors openly state in court, 'We'll drop these charges if he tells us what he did on the C-17.' (See EXHIBIT V).

August 27, 2014 – Sarah Naheedy speaks directly with prosecutors who express their concerns focus on national security, not the alleged criminal conduct. (See Exhibit X).

September 12, 2014 – Government sends proffer letter setting terms and scheduling proffer. (See Exhibit V).

September 17, 2014 – Proffer session occurs; prosecutors question Mr. Gartenlaub solely regarding national security issues.

September 18, 2014 – Mark Werksman sends a follow-up letter to the government, expressing hope that concerns regarding national security have been alleviated. (See EXHIBIT Y).

Early October 2014 – Reverse proffer session occurs; prosecutors present evidence and question Mr. Gartenlaub exclusively about national security matters, not the alleged offense.

October 2014 – Mr. Gartenlaub declines to provide national security information during the reverse proffer.

October 23, 2014 – A federal grand jury returns a two-count indictment against Mr. Gartenlaub.

December 4, 2015 – Case proceeds to trial, with no disclosure to the jury regarding the government's retaliatory motive.

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
Case No. 24-7437

**KEITH GARTENLAUB,**
Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,
Respondent-Appellee.

**EXHIBITS**
In Support of
MOTION FOR RECONSIDERATION OF DENIAL OF LEAVE TO FILE SECOND OR SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

Submitted by:
Keith Gartenlaub
Pro Se Petitioner
9 Maverick
Irvine, CA 92602
(949) 880-1067
April 2025

## EXHIBIT INDEX

| Exhibit | Description |
|---|---|
| Exhibit A | Tanscript of Sentencing Hearing on 2016-8-29 |
| Exhibit B | Notice of filing Quash, Supress FISA, Traverse, and Franks |
| Exhibit C | GovtUnclassified_DisclosureOfFISA |
| Exhibit D | Undisclosed FISA suppression agreement |
| Exhibit E | Affirming he was unaware of FISA suppression |
| Exhibit F | Declaration of Chris Elliott Court observer regarding trial |
| Exhibit G | Fishbach discloure thru Mark Werksman. Showed altered post-search drive images |
| Exhibit H | Signed under pressure to suppress IAC claim |
| Exhibit I | Pixley conflict and Werksman firm involvement |
| Exhibit J | Signed letter from Keith to Jeff decribing coercion |
| Exhibit K | Cover sheet for Forensic examiner Pixley Report showing 10/24/2014 |
| Exhibit L | Earlier evidence disclosure showing delay |
| Exhibit M | Expert requested chargeable file list days before trial |

| | |
|---|---|
| Exhibit N | Government has not received Rule 16 disclosure Dec 6, 2015. Trial started Dec 4, 2015 |
| Exhibit O | Front of CD burned at FBI lab for Jeff Fischbach- Did not receive until 12/2/15 |
| Exhibit P | Confirms law enforcement bias on jury |
| Exhibit Q | Identifies lead juror with law enforcement ties |
| Exhibit R | Excerpt of Transcipt Scott Hamby |
| Exhibit S | Forensic expert denied time and opportunity to testify |
| Exhibit T | Mass document dump pre-trial |
| Exhibit U | Second wave of late evidence disclosure |
| Exhibit V | Confirms prosecutor's coercive statement and intent |
| Exhibit W | Summary of Retaliatory and Coercive Prosecutorial Conduct |
| Exhibit X | Proffer letter to meet with prosecution regarding nation security concerns |
| Exhibit Y | Email from Mark Werksman to Prosecutors Confirming National Security Focus and Indictment Delay |
| Exhibit Z | Affidavit of Tor Ekeland petitioners pro bono attorney for previous 2255 |

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**United States of America,**
Plaintiff-Appellee,

v.

**Keith Gartenlaub,**
Defendant-Appellant.

Case No. 24-7437

---------------------------------------------

**EXHIBIT A**

**TANSCRIPT OF SENTENCING HEARING ON 2016-8-29**

**Sentencing Before Hon. Christina A. Snyder**

**Submitted in Support of:**
**Motion to Reconsider Application for Leave to File Second or Successive Motion Under 28 U.S.C. § 2255**

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

\- - -

HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE PRESIDING

\- - -

UNITED STATES OF AMERICA, )
)
PLAINTIFF, )
)
VS. ) CASE NO:
) SA CR 14-173-CAS
KEITH PRESTON GARTENLAUB, )
)
DEFENDANT. )
)
_______________________________)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, AUGUST 29, 2016

LOS ANGELES, CALIFORNIA

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 453
LOS ANGELES, CALIFORNIA 90012
PH: (213)620-0890

APPEARANCES OF COUNSEL:

ON BEHALF OF PLAINTIFF:

BY: ANTHONY LEWIS
VICKI CHOU
ASSISTANT UNITED STATES ATTORNEY

1100 UNITED STATES COURTHOUSE
312 NORTH SPRING STREET
LOS ANGELES, CA 90012

ON BEHALF OF DEFENDANT:

WERKSMAN JACKSON
BY: MARK WERKSMAN, ESQ.

888 WEST SIXTH STREET
FOURTH FLOOR
LOS ANGELES, CA 90017

INDEX


| PROCEEDINGS | PAGE |
| --- | --- |
| SENTENCING | 4 |

LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 29, 2016; 1:07 P.M.

- - -

THE CLERK: Calling Calendar Item No. 12.

Case No. SA CR 14-173.

United States of America versus Keith Preston Gartenlaub.

Counsel, please state your appearances.

MR. LEWIS: Good afternoon, Your Honor. Anthony Lewis and Vicki Chou for the United States.

THE COURT: Good afternoon.

MR. WERKSMAN: Good afternoon, Your Honor. Mark Werksman appearing on behalf of Mr. Gartenlaub who is present in court.

THE COURT: Good afternoon.

All right. Let me just review what the preliminaries are. Tell you at least my preliminary thinking on this matter. First of all, it appears that the presentence report was initially disclosed in, I guess, March of this year and the Court has reviewed -- March 4th was the date it was initially prepared.

The Court has reviewed the presentence report, the addendum to the presentence report, the second addendum to the presentence report. Mr. Gartenlaub's position regarding sentencing, Mr. Gartenlaub's objections to the PSR. The government's response and also the government's position

regarding sentencing.

I think the major change that has occurred here is my order of August 1st where I vacated the conviction for receipt of child pornography. I'm not gonna go back and review that. I think my reasons are stated in the order.

And given that decision, it does seem that the advisory range in this case has changed and that's why we have the revised position from probation where the Offense Level is now 33 with Criminal History Category of one and an advisory range of 87 to 108 months.

I believe the probation has argued for 98 months. I think the government concurs with that, but I'm not clear. I assume -- I have not seen a paper from you Mr. Werksman, and it may be we need more briefing before I can actually complete this proceeding, but I will just give you my preliminary thoughts and then let you argue and, obviously, I'm gonna want to hear from Mr. Gartenlaub.

This is not like any other case that one is going to find. Viewed as a possession of child pornography case, and I know there is a victim and I want to go back to the issue of the victim and restitution, but the thing as I noted in my earlier order that makes this case unique is that there doesn't seem to have been any addition to the collection of child pornography from the time it was first assembled back in approximately 2004. And that's a very unusual set of

circumstances.

At trial I believe that the defense forensic expert Mr. Fishbach said there was no evidence that child pornography was ever seen by anyone who used the computer much less Mr. Gartenlaub. And the government's forensic expert Mr. Pixley said he could not find any evidence of the material being downloaded on to any of the computers and so we have a particularly unusual case.

Secondly, it is not simply child pornography that was on the files. It was adult pornography which differentiates the case from the cases contemplated by the Guidelines. Mr. Gartenlaub has been in a recovery program, if you will, and so far has performed very successfully.

So that is, I think if you view this simply as a child pornography case, I think that there is a basis for a substantial variance from the sentence that was suggested by probation and the government. And frankly, I'm not sure where I want to come out, but I think something in the range of 42 to 48 months is probably where I'm leaning after having agonized over this for a long period of time.

There is the other factor and I'm not sure that it's particularly relevant, but I'm gonna recite it anyway. Obviously, the Su Bin was related to this case. The government chose to prosecute Mr. Gartenlaub on the possession of child pornography case and that is the

government's right to do, but I still have to, I think, give some consideration to the fact that Mr. Su Bin who plead guilty to espionage charge was sentenced to less than 60 months in the prison. I think it was 46 or 48 months and I'm not suggesting that the case is comparable or that it is to be considered in terms of 3553(A), but I think I have to note that there is a case that's deemed to be related to this case.

And even though the charges are entirely different in this case and provide no basis for comparison in terms of the charges between Mr. Gartenlaub and Mr. Su Bin, I still have to note that Mr. Su Bin was sentenced to a term that was substantially less based on the charges brought against him.

I don't think it makes much difference because if I'm looking at Mr. Gartenlaub and applying what I think are the appropriate standards, namely, no subsequent possession of child pornography, an attempt to rehabilitate and whatever else, I would make the variance even if I were standing with only Mr. Gartenlaub's case before me and no knowledge of Mr. Su Bin's case.

So I just think that this is a remarkably difficult case. I don't think there is anything comparable to this case. It is a one-of-a-kind case, but on the other hand, there are victims. There are people who have obviously suffered as a result of the child pornography in this case

and that is something that I have to take into account.

I'm not sure I understand the government's position on restitution at this point because, obviously, there is a request for about a million dollars in restitution. And I'm not quite clear from the government's restitution memorandum that I know where we stand on that issue.

But I think there are a lot of questions to be answered and maybe they can be answered in the course of oral argument today, but it may be that the Court is going to ask for further briefing also. So that is just my preliminary overview of where I start out today and I welcome comments from anyone.

MR. WERKSMAN: May I be heard, Your Honor?

THE COURT: Sure.

MR. WERKSMAN: Your Honor, the Court is correct to be concerned, troubled, circumspect about this case. It is unique. It's unique not only because the collection of child pornography attributed to Mr. Gartenlaub was allegedly, and he's denying this to this day.

THE COURT: I know that.

MR. WERKSMAN: Allegedly downloaded into a computer within his possession from an unknown source. And to this day, the government's own expert called it an unknown source. So there's a collection of pornography that's put on his computers between 2002 and 2005 and it's not expanded,

changed, altered, utilized, visualized, viewed, shared, traded, exchanged or done anything with for between 11 and 14 years.

THE COURT: Right.

MR. WERKSMAN: Now, during that time period, you have this 47-year-old electrical engineer with no prior criminal record of any kind with a sterling work history with Boeing where until this catastrophe was the IT engineering manager in Long Beach.

And so until literally two years ago today, Your Honor, he made bail and he's been on an ankle bracelet since then confined to quarters. Living as a piranha in his community accused of probably the worst thing you can accuse anyone of which is possession of child pornography. It doesn't get worse. He knows that no what matter sentence you give him, he's gonna be a registered sex offender.

THE COURT: Right.

MR. WERKSMAN: His life's over.

And the reason you're so perplexed and troubled by it is not only because of the weird origins of the case. A super secret warrant by the FBI who does a sneak and peak because they think maybe he's a spy and they think he's a spy cause they read something online in wire.com. Now, Your Honor knows more about it than I do because of the in camera submissions.

THE COURT: I do.

MR. WERKSMAN: But I read the Su Bin file and we know that the FBI apparently focused on Mr. Gartenlaub because they read something in wire.com. I don't want to go on a frolic and detour about that, but we know that after four years of investigation into what the FBI at one time considered one of the most serious breaches of American national security since 2001, since September 11th, no charges have been brought.

They don't even bring it up. It's not a factor the government's even asking you to consider in sentencing. To say by the way, in addition to being a vile pervert, he's a spy, he's committed espionage, throw the book at him. The government doesn't even mention it.

And I think from that we can assume that the case against him regarding espionage was weak at best, tenuous, unproven and uncharged so you have all that.

But consider this, Your Honor. The typical case, we've dealt with these cases. Everyone in this room except the prosecutors who specialize in cyber crime and probably -- well, maybe they have. But usually, Your Honor, somebody who's got a possession of child pornography case, they stumble into the case not because of a super secret FISA warrant looking for evidence of espionage which never materializes, but the guy's on a chatroom talking to whom he

thinks is a 13-year-old girl and it turns out to be an undercover.

THE COURT: Right.

MR. WERKSMAN: The guy's on an electronic blackboard trying to add to his collection, trading. Child pornography collectors they're perverts and they have a fetish. And they collect and they preen their collection. They groom their collection. They don't just sit with it passively in a storage facility for 11 years unused.

That's why Your Honor is looking over here and wondering do they really have the right guy? Did the jury convict the right guy? Did they make an intelligent choice?

THE COURT: I'm not having that discussion. The jury made its decision. I'm not gonna go behind what the jury decided, but the question is what is the evidence -- now we have a conviction. Obviously, you've got your rights on appeal and I know that you will exercise them, but the question is given what I know, assuming this jury did convict Mr. Gartenlaub, given what I know, given what the facts are, is this a case that falls within the heartland of usual possessions of child pornography. You and I both agree it does not.

MR. WERKSMAN: It does not and let me cut to this point, Your Honor. Your Honor saying he's legally guilty. We agree to that. I was here when the jury came back. He's

convicted. But is he morally culpable to the extent that the guidelines would hold him to be morally and legally culpable?

A guy who basically -- whose possession -- and I'm not relitigating the case, but let's face it. It's one of the weakest cases that's ever come down the pike where they find some kiddie porn in a computer that's been there for 12 years gathering mold, unused, unviewed, never looked at, never exchanged, never traded. And here's a guy who leads a life that's blameless. That is completely divorced from the type of lifestyle you'd expect for someone who bears this legal and moral culpability.

He's not in chatrooms looking for child pornography. He's not -- there's never been a TRO against Keith Gartenlaub because he's sexually misbehaved against anybody. He's not a weirdo Boy Scout leader with a string unproven or uncharged complaints and we can finally say aha, we knew you were a pervert. It took till now to find out. Nothing.

He's even been married for eight years to Tess who is late. She got stuck in traffic. She's been here a dozen times before.

THE COURT: I know that.

MR. WERKSMAN: Married to an adult for eight years with two children, daughters, teenage daughters, who wrote letters. Your Honor has 14 letters from people, including

stepdaughters, who say this guy is the salt of the earth. These letters describe him as a phenomenal person, a successful person. They use words like loving and devoted husband. A man of integrity. A bright man. A hard working man. A trustworthy man.

You don't make it to 47 without a prior criminal history or without being labeled a pervert by accident. It's because he's doing something right in his life. It's cause he's not, he's not a kiddie porn pervert.

Kiddie porn perverts by this time they've accumulated a record. They've done something to indicate a passion for or interest in child pornography. The fact that there was adult pornography on his computer which the Court noted is significant. It meant there was junk in that computer. He's not -- people who collect child pornography don't generally also collect adult pornography.

THE COURT: That is true and that's certainly not what the guidelines believe is the case.

MR. WERKSMAN: Now, I will leave with this thought, Your Honor. For two years now he's been basically living house arrest. There was a little hiccup. He had a little spat with Pretrial in that he was using some video game. The Court declined to make an issue of it. But otherwise, he's had a pretty blameless exemplary period on pretrial release.

And I don't want to overstate the significance of

being on house arrest. It's not like being in the big house, but he's been basically -- for a guy who up until his career and life hit a brick wall two years ago Saturday because he was arrested on the 27th of August 2014. Up until his life hit a brick wall two years ago, he'd get up every morning and go to work and what would he do? He would work at Boeing on products and services to enhance American national security. Patriotic American, hard working guy, well educated, professional.

And then, bam. He went from every day getting up and trying to figure out how to do some of the most sophisticated computer electronics known to man in the defense of our country to having to sit at home with an ankle bracelet. He can't go anywhere and every Thursday he gets to go out for two to three hours to run errands to go to Walgreen's and buy toothpaste.

That is harsh. That is punitive, Your Honor. I submit he should get some credit, if not day-for-day credit, for two years of house arrest.

I'll also remind the Court in closing of the horrendous, deep-seeded, permanent collateral damage that this conviction will do to him. No matter what Your Honor sentences him to, he will be a registered sex offender, a piranha in the community. He's unemployable.

By the way, as you know, Your Honor, for the last